# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KELLI IRBY,         )
            )
 Plaintiff,        )
            )
v.            )  Case No. CIV-24-1142-D
            )
CSAA GENERAL INSURANCE   )
COMPANY d/b/a AAA INSURANCE,  )
            )
 Defendant.       )

## ORDER

Before the Court is Plaintiff Kelli Irby's Motion to Compel. [Doc. No. 36]. Defendant CSAA General Insurance Company ("CSAA") filed its response. [Doc. No. 37]. Plaintiff did not file a reply in support of the instant motion, and the time to do so has expired. Thus, the matter is fully briefed and at issue.

## BACKGROUND

This action arises from Defendant's denial of Plaintiff's claim for underinsured motorist ("UM") benefits following a motor vehicle collision in which Plaintiff sustained injuries. [Doc. No. 1-1]. As a result of Defendant's denial of Plaintiff's claim, she filed this lawsuit against Defendant asserting, in relevant part, a bad faith claim and an award of punitive damages. *Id.*

Savana Blake, the CSAA adjuster assigned to Plaintiff's claim, testified at her deposition that, when evaluating Plaintiff's damages for purposes of assigning a value to the claim, she did not assign separate values to each element of damages. [Doc. No. 36-9,

1

at p. 25-27]. Rather, she considered all elements collectively and assigned a single lump-sum value. *Id*.

Following Ms. Blake's deposition Plaintiff issued Request for Production No. 41. [Doc. No. 36-1]. Request for Production No. 41 requests that Defendant "[p]roduce a copy of all UM claim files in the State of Oklahoma, from 2022 through 2024." *Id.* at p. 3. In response, Defendant objected on the basis that the request was "overbroad, unduly burdensome, and not reasonably or proportionately calculated to lead to the discovery of relevant or admissible information." *Id*.

In December 2025, Plaintiff's counsel and Defendant's counsel held the prerequisite conference prior to filing the instant Motion in an attempt to resolve their dispute. [Doc. No. 36, at p. 1]. At the conference Plaintiff agreed to limit the request to Oklahoma UM claim files from 2022 through 2024 that were handled by Ms. Blake, in which she denied or limited payment of the claim because she determined there was sufficient coverage from another insurance policy ("Revised RFP. No. 41"). [Doc. No. 36-2]. Defendant agreed to determine how many claim files would be responsive to Plaintiff's Revised RFP. No. 41. [Doc. No. 36-3]. On December 30, 2025, Plaintiff's counsel sent an email to Defendant's counsel regarding Defendant's response to the Revised RFP. No. 41, but did not receive a response prior to filing the instant Motion. [Doc. No. 36-7].

Plaintiff seeks to require Defendant to produce all documents responsive to her original Request for Production No. 41, rather than her revised request. Plaintiff argues that all of Defendant's Oklahoma UM claim files from 2022 through 2024 are relevant to the issue of whether "there is a pattern and practice at CSAA where adjusters do not itemize

their evaluations to comport with the elements of damages that their insureds are entitled to under Oklahoma law." [Doc. No. 36, at p. 13]. Plaintiff further argues that the requested documents are necessary to "prove that Defendant is engaged in a pattern and practice of inadequate investigation—resulting in inadequate valuation— of UM/UIM claims that arises to the level of bad faith . . .." *Id.* at p. 14.

In response, Defendant argues that the non-party UM claim files are irrelevant because Oklahoma law does not require an adjuster to itemize her valuation of a claim, and thus, failure to itemize has no bearing on whether it acted in bad faith. [Doc. No. 37, at p. 5-9]. Moreover, Defendant asserts that the request is overbroad and unduly burdensome because it would necessitate the review of 298 claim files totaling approximately 235,718 pages, which it estimates would require approximately 2,357 hours to complete. *Id.* at p. 9-10. Furthermore, Defendant argues that to the extent the request seeks relevant documents, the request should be limited to the Revised RFP. No. 41 because the parties agreed to the revised request at the meet and confer conference. *Id.* at p. 9-10. Defendant asserts that limiting the discoverable documents to the parties' agreement yields 6 claim files, which it concedes is not unduly burdensome to review and produce. *Id.*

## STANDARD OF DECISION

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). The considerations that bear on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

Relevance for purposes of discovery remains broader than relevance for purposes of trial admissibility. Discovery is not, however, intended to be a "fishing expedition." *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) (unpublished). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quotations and citation omitted). "When the request is overly broad, or relevance is not clear, the party seeking the discovery has the burden to show the relevance of the request." *Coffman v. Avem Bus. Sols., LLC*, No. CIV-22-426-D, 2023 WL 8654942, at *1 (W.D. Okla. Dec. 14, 2023) (citing *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. Nov. 17, 2010)).

## DISCUSSION

The Court finds that similar UM claim files, as defined *infra*., are relevant to Plaintiff's bad faith claim, in that they may show that Defendant conducted an inadequate investigation. *See Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019) ("A plaintiff may also show bad faith by providing evidence that the insurer performed an inadequate investigation of the claim." (applying Oklahoma law) (citation omitted)). Indeed, the records may show that when dealing with similar UM claims, Ms. Blake itemized her valuations for each element of the claimants' purported damages separately.

4

Thus, her failure to do so here and inability to testify as to the value she determined for any element of Plaintiff's damages arguably may evidence an inadequate investigation.

However, although Plaintiff argues that the relevant claim files are all of Defendant's Oklahoma UM claim files from 2022 through 2024, the Court finds that the scope of relevant claim files is substantially narrower. The Court finds that the relevant claim files are those responsive to the Revised RFP. No. 41 (i.e. all of Defendant's UM claims in Oklahoma from 2022 through 2024 that were handled by Ms. Blake in which she denied or limited payment of the claim because she determined there was sufficient coverage from another's insurance policy).

Plaintiff has not shown how the other Oklahoma UM claim files handled by other adjusters on various policies that may contain different terms and conditions are relevant to show a pattern or practice of Defendant denying UM claims on the basis of inadequate investigation, nor that such documents are otherwise relevant to the parties' other claims or defenses. *See Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-668-CVE-FHM, 2017 WL 3579209, at *2 (N.D. Okla. Aug. 18, 2017) (limiting the scope of discoverable non-party claim files).

Moreover, the Court finds Plaintiff's reliance on *Reibert v. CSAA Fire and Cas. Co.*, No. 17-CV-350, 2018 WL 279348 (N.D. Okla. Jan. 3, 2018) is misplaced. Rather than supporting Plaintiff's expansive request, *Reibert* supports the Court's limitation. Indeed, in *Reibert*, the plaintiffs' roof was allegedly damaged by a storm, which was covered by the defendant insurer's policy. *Id.* at *1. The defendant hired an inspector, who found there was no hail or wind damage to the roof. *Id.* at *1. During discovery it became apparent that the

inspector may not have had the relevant certifications or qualifications to inspect the roof. *Id.*

Following the inspector's deposition, the plaintiffs sought additional discovery from the defendant regarding its use of the inspector on other roof claims in Oklahoma for the prior three years and his reports for those claims. *Id.* at *1-2. In response to the additional discovery requests the defendant objected to producing the inspector's responsive reports. *Id.* at *2. The defendant argued that the requested reports were not relevant, and that the request was overbroad and unduly burdensome. *Id.* at *1. Additionally, the defendant asserted that the discovery requested was not relevant because it did not learn that the inspector lacked the necessary qualifications until his deposition, and that it reasonably relied upon his advertised qualifications when retaining him. *Id.* Therefore, the defendant argued that it was reasonable for it to rely on his report regarding the plaintiff's roof in denying the claim. *Id*. The plaintiffs filed a motion to compel. *Id*.

The court found that the relevance of the discovery was not readily apparent, and thus, the burden of proof was on the plaintiffs. *Id.* at *5. The plaintiffs argued that the information sought was relevant to the reasonableness of the defendant's reliance on the investigator's report in denying their claim, and to show a state-wide consistent pattern of the defendant denying claims in which the inspector conducted an inspection. *Id.* The defendant argued that the plaintiffs' requested discovery was a fishing expedition, and that the other claims had no relevance as there are various reasons that support those denials. *Id.*

6

The court found that the plaintiffs' requested discovery was relevant, but only to the extent limited by the court. *Id.* at *6. Indeed, the court limited the investigator's discoverable reports to his reports on behalf of the defendant regarding wind and hail claims in the State of Oklahoma for the two years prior to the inspection. *Id.* at *6-9. The court found that the responsive reports were relevant to whether the defendant's reliance on the investigator's report in denying the plaintiffs' claim was reasonable and in good faith. *Id.* at *6. Moreover, in support of its finding the court noted that the plaintiffs were seeking the investigator's reports, "rather than the entire claim files." *Id.* at *8.

Here, unlike the discovery request in *Reibert* that was limited to the inspector's reports, Plaintiff's expansive request is not limited to the other UM claim files that were investigated by Ms. Blake. Additionally, the discovery request in *Reibert* was limited to reports on similar claims— hail and wind damage, but Plaintiff's original request is not limited to similar claims. However, like in *Reibert*, the claim files that the Court finds are discoverable require both Ms. Blake's involvement and similarity in underlying claims.

Because Defendant has conceded that the Revised RFP No. 41 is not overbroad or unduly burdensome, the Court does not and need not address the issue.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Production of Documents [Doc. No. 36] is **GRANTED IN PART AND DENIED IN PART**. Defendant shall produce all of its Oklahoma UM claim files from 2022 through 2024 that were handled by Savana Blake in which she denied or limited payment of the claim because she

determined there was sufficient coverage under another insurance policy. Defendant shall

produce these documents within twenty-one (21) days from the date of this Order.

**IT IS SO ORDERED** this 5th day of June, 2026.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE